IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01072-RBJ

HEIDI CLICK,

     Plaintiff,

v.

JOHN PAUL LUPORI, D.D.S.

     Defendant.

---

## ORDER

---

This matter is before the Court on the plaintiff's Motion for New Trial Pursuant to Fed. R. Civ. P. 59 [ECF No. 42]. For the following reasons, the motion is denied.

## FACTS

This is a professional negligence case arising from the extraction of wisdom teeth. The following summary of the facts is based upon my review of the trial record, including the transcribed portions filed by the parties and both the reporter's notes and my own trial notes.

### A.  The Surgery.

The plaintiff, Heidi Click, went to her general dentist complaining of pain in her lower right jaw. The dentist determined that she should have her impacted right-side third molar (wisdom tooth) extracted and referred her to Dr. John Lupori, an oral surgeon practicing primarily in Steamboat Springs, Colorado. The dentist recommended extraction of the tooth and evaluation of her three other third molars for possible extraction.

1

Ms. Click was seen by Dr. Lupori the next day, June 7, 2012.  Upon examination and review of a type of x-ray called a panorex, Dr. Lupori recommended that all four wisdom teeth be extracted in two separate sessions to reduce the trauma to Ms. Click.  He also observed and informed Ms. Click that her interior alveolar nerves on both sides were very close to the roots of the lower molars, creating a risk of injury to those nerves.  Ms. Click decided to proceed with the extractions.  She opted to have all four teeth removed in one session, a decision that was contrary to Dr. Lupori's recommendation but one that he does not fault.  He then extracted all four of Heidi Click's wisdom teeth in a 28-minute procedure.

Later in the afternoon a member of Dr. Lupori's staff placed a routine call to inquire how Ms. Click was doing, but apparently because Ms. Click was under sedation and asleep, she did not receive or return the call.  Several hours after the surgery but still on the same day Ms. Click presented to the Emergency Room at Memorial Hospital in Craig, Colorado with severe facial pain, swelling, and bruising.  She was initially seen by Dr. Diana Hornung, a family medicine specialist who was on call at the hospital that evening.

At about midnight Dr. Hornung, called Dr. Lupori at home.  He confirmed that he had performed oral surgery on Ms. Click that day, that she had had IV anesthesia, and that there was no abscess or infection.  Dr. Lupori apparently did not ask why Ms. Click was in the hospital. Dr. Hornung documented the call in her chart, but Dr. Lupori did not document the call in his records.  In his deposition in this case Dr. Lupori denied that he had received a call and apparently suggested that Dr. Hornung's indication that she had placed such a call was fabricated.  At trial he acknowledged that he received a call but said that he could not remember it.  In any event, he did not follow-up with the hospital or Ms. Click the next day or at any time.

2

Ms. Click was diagnosed with a small displaced fracture of the lingual plate; bruising extending down her chest to the tops of her breasts; and injuries to three of the four major nerves servicing her tongue and jaw area.  The fracture and bruising were relatively minor and temporary.  The injuries to the nerves were severe and permanent.  Ms. Click spent seven days in the hospital.

The inferior alveolar nerve branches through the lower jaw on both the left and right side. In the trial it was often referred to as two nerves, the left and right inferior alveolar nerves, providing sensation to the chin, gums, lower lip and certain teeth.  The lingual nerve is also a bilateral sensory nerve that was often referred to during trial as two nerves, the left and right lingual nerves.  The lingual nerves are important for the sense of taste and the perception of touch and temperature to the tongue.

The inferior alveolar nerve and the lingual nerve on the right side of Ms. Click's jaw were permanently injured in the extraction procedure.  Her inferior alveolar nerve on the left side was also permanently injured, although the consensus of the experts was that the damage on the left side was less severe.  Her lingual nerve on the left side was not injured.  The overall result of the damage to the three nerves has been impaired speech and sensation and, notwithstanding the impaired sensation, severe chronic pain.  These consequences have, in turn, had a substantial negative effect on Ms. Click's quality of life.

Ms. Click has subsequently been seen by at least two oral surgeons.  One, a specialist in the repair of nerve damage, performed two surgical procedures in an attempt to alleviate as much of her pain as possible.  The repair efforts were only marginally and temporarily successful.

On June 20, 2012, about a week after her discharge from the hospital, Ms. Click contacted Dr. Lupori's office and asked for a copy of her medical records.  In response to a

3

question by the person who took the call, Ms. Click said that Dr. Lupori had broken her jaw.  Ms. Click was urged to come in so that Dr. Lupori could examine her.  However, she declined to be seen by him again.  According to Dr. Lupori, his staff's report of the phone call was his first indication that Ms. Click had sustained serious complications from the extraction procedure.  However, he still did not attempt any follow-up with her, although it is unlikely that Ms. Click would have seen him in any event.  Instead, viewing Ms. Click as still being his patient, Dr. Lupori obtained access to her records from her hospitalization and reviewed an x-ray with a radiologist to see whether she had a "broken jaw."  The x-ray revealed the small displaced fracture of the lingual plate.  Dr. Lupori has had no further contact with Ms. Click other than through this lawsuit.

   **B.  <u>Expert Testimony</u>.**

   At trial the plaintiff called the two oral surgeons who had examined and treated her after the surgery.  However, neither of those doctors was asked to provide opinions on the standard of care or possible deviation from the standard of care in their trial testimony.  Plaintiff called two specially retained oral surgeons as experts concerning the applicable standard of care and whether Dr. Lupori deviated from the standard of care.  The defendant called one oral surgeon to testify on the same subjects in addition to himself.

   1.  <u>Dr. Thomas Flynn</u>.

   Plaintiff's first expert, Dr. Flynn, is an oral and maxillofacial surgeon, presently practicing in Nevada, who has extensive experience in both clinical practice and teaching.  His opinion is that Dr. Lupori deviated from the standard of care in numerous ways.

*Before surgery*.

Dr. Flynn believes that Dr. Lupori failed to diagnose the cause of Ms. Click's pain properly.  If he had performed a more thorough examination rather than relying on the panorex, he probably would have determined that the source of her pain was a garden-variety tooth ache due to decay or a crack in a tooth, not an impacted wisdom tooth.

*Surgical errors*.

a.  Dr. Lupori removed excessive bone, thereby compromising bone and gum support for Ms. Click's second molars.  He might have removed part of the bony canal in which the inferior alveolar nerves ran, thereby injuring those nerves.

b.  Dr. Lupori applied excessive force, one consequence being the fracture of the lingual plate.

c.  Dr. Lupori did not properly control his surgical instruments, evidenced by what Dr. Flynn interpreted on the films as drill holes showing that Dr. Lupori drilled through bone behind the tooth where he would expect to find the lingual nerve.[1]

d.  Removal of the lower wisdom tooth on the left side without sectioning it into smaller pieces was below the standard of care.  Dr. Flynn was so skeptical that Dr. Lupori could or would have done this that he was inclined to disbelieve Dr. Lupori's testimony that he did not section the tooth.  Sectioning reduces bone loss and the chance of nerve damage.

e.  Dr. Lupori probably should have performed a coronectomy on the lower wisdom teeth, whereby the surgeon separates the crown from the root and removes only the crown.  Dr. Flynn believes that the procedure would have reduced the risk of nerve damage.

---

[1] Dr. Flynn testified that he saw this on the left side, and that Ms. Click sustained injuries to her left and right lingual nerves.  Transcript [ECF No. 46] at 48.  However, the plaintiff concedes (and the other experts agreed) that she did not sustain injury to her lingual nerve on the left side.

Dr. Flynn did not point to any of these surgical errors as the specific cause of the injuries to Ms. Click's nerves.  He also acknowledged that swelling, bruising, hospitalization, extensive bleeding, injuries to inferior alveolar nerves, injuries to lingual nerves, and fractures of the linear plate are known complications of wisdom tooth extraction that can occur without negligence. However, he testified that he has never in 38 years of practice seen the "constellation" of complications that Ms. Click sustained.  [ECF No. 46 at 45].  The odds against all of these complications occurring in one surgery are a "strong indicator that excessive force, lack of control of instruments, excessive bone removal, and lack of following accepted techniques for third molar removal occurred in this case."  *Id.* at 54.

*Additional Errors*.

a.  Dr. Flynn testified that Dr. Lupori's recordkeeping was substandard.  He noted Dr. Lupori's failure to document the call he received from Dr. Hornung and his failure to document that Ms. Click was hospitalized following the procedure.  [ECF No. 46 at 43, 73].

b.  Dr. Flynn also believes that Dr. Lupori did not properly follow up with Ms. Click after the surgery.  This, he testified, decreased the likelihood of successful surgical repair.  *Id.* at 26, 74.

2.  Dr. Louie Felton Peede, Jr.

Plaintiff's second expert, Dr. Louie Peede, is a highly experienced Colorado oral and maxillofacial surgeon.  He acknowledged that extraction of impacted wisdom teeth is a difficult procedure, and he further acknowledged that he had injured patients' nerves during such extractions.  He disagreed with Dr. Flynn as to whether removal of the four wisdom teeth was indicated (he believes it was) and as to whether a coronectomy was appropriate (he believes it was not).  However, his ultimate opinion was similar to that of Dr. Flynn.  He has never heard of

a patient with that many complications and a week of hospitalization after wisdom tooth

extraction.  He testified that he cannot understand how so many complications could occur

without technical malfeasance.  Therefore, his opinion is that "something was done during this

procedure below what would be considered the prudent standard of care for a trained oral

surgeon." *Id.* at 141.

Unlike Dr. Flynn, Dr. Peede for the most part did not list specific negligent acts.  The

exception was that he testified that removal of the lower wisdom tooth on the left side without

sectioning was below the standard of care.  But he acknowledged that the most serious injuries

were on the right side.  The worst injury was to the right inferior alveolar nerve.  The injury to

the right lingual nerve was similar.  The left inferior alveolar nerve was also damaged but to

some extent it spontaneously repaired.  There was no injury to the left lingual nerve.

3.  Dr. Beryl Hunter.

Defendant's standard of care expert (other than Dr. Lupori) was Dr. Beryl Hunter,

another very experienced oral and maxillofacial surgeon practicing in Colorado.  His opinion

was that, generally speaking, Dr. Lupori's care was reasonable and appropriate.  Dr. Hunter

acknowledged that in his deposition he testified that it was a breach of the standard of care to

remove the lower wisdom tooth on the left side without sectioning.  His trial testimony was

somewhat more equivocal, but the gist of it was that he questioned how an oral surgeon could or

would attempt to remove that tooth in that manner.  Under cross-examination he testified that Dr.

Lupori's failure to document the call from Dr. Hornung on the night of Ms. Click's surgery was

a deviation from the standard of care.  He indicated that Dr. Lupori's failure to document the

depth of Ms. Click's periodontal pockets was also below the standard of care.

Dr. Hunter acknowledged that he had never heard of a patient with the combination of injuries sustained by Ms. Click or specifically of a patient's having all three of the major nerves injured in one wisdom tooth procedure.  [ECF No. 47 at 143].  However, he does not believe that her injuries were caused by negligence.  [ECF No. 47 at 75, 116].  He pointed to Ms. Click's anatomy, in particular the position of the nerves in relation to the lower wisdom teeth, as a possible explanation for the results.

C.  **Complaint.**

In her Complaint in this case the plaintiff alleged that she suffered permanent and severe neurological injuries as a result of Dr. Lupori's surgery.  [ECF No. 1 ¶ 12].  She alleged that Dr. Lupori was negligent in one or more of the following particulars:

- The defendant caused parasthesia (a tingling or burning sensation) of all four of the nerve systems involving the teeth which were extracted;

- The defendant removed an extreme and inappropriately large amount of bone from the buccal plates as well as some of the lingual plates of bone on both of the lower and third molars;

- The defendant extracted these teeth in a negligent and unprofessional manner that is not keeping with the standard of care;

- The defendant's procedure failed to preserve the buccal plate;

- The defendant's procedure caused irreparable and permanent bone and nerve damage bilaterally to the plaintiff;

- The defendant failed to properly secure and protect important anatomical and neurological structures during the performance of these procedures;

- The defendant caused significant and unexpected neurological and orthopedic

  injury to the plaintiff.

*Id.* ¶ 13 (a)-(g).

### D. <u>Instructions to the Jury</u>.

The jury instructions relevant to the pending motion are numbers 1 and 12.  Instruction

No. 1, setting forth the claims and defenses of the parties provided, in pertinent part:

> The plaintiff claims: on June 7, 2011, she underwent a dental procedure to remove her 4 wisdom teeth under the care of the defendant, an oral surgeon.  She claims that the defendant's treatment deviated from the acceptable standards of dental care, and that he was negligent in performing this extraction.  The plaintiff claims that as a result of his negligence, she was hospitalized for several days, suffered neurological injury, bone loss and dental problems.  Specifically, the plaintiff claims that the defendant failed to properly secure and protect important anatomical and neurological structures when he performed the extractions.  As a result of the defendant's negligence, the plaintiff claims she has suffered significant nerve injury to her mouth, lips and tongue, that she has been required to undergo further surgeries, and that she will require significant medical and dental care in the future.  The plaintiff claims her ability to speak clearly has been dramatically affected by her injuries.

[ECF No. 37-1 at 2].

> Instruction No. 12 defined "negligence" in the context of a doctor who is a specialist:

> A physician who has or who holds himself out as having special skill and knowledge to perform a particular operation, treatment, or procedure is negligent if that physician does an act that reasonably careful physicians possessing such special skill and knowledge would not do, or fails to do an act that reasonably careful physicians possessing such special skill and knowledge would do.

> To determine whether such a physician's conduct was negligent, you must compare that conduct with what a physician having and using the knowledge and skill of physicians who have or who hold themselves out as having the same special skill and knowledge, at the same time, would or would not have done under the same or similar circumstances.

*Id.* at 14.

During the course of its deliberations the jury sent out the following question to the

Court: "What is the definition of negligence?"  [ECF No. 37-3 at 1].  After conferral with both

parties' attorneys, and with their agreement, the Court answered the jury's question as follows:

> "Negligence" in general means a failure to do an act which a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect others from bodily injury, death or property damage.  However, in this case negligence is explained in the specific context of a claim of negligence against a physician.  That definition is your Instruction No. 12, and that is the definition that you should apply in your deliberations.

*Id.* at 2.

### E.  <u>Verdict</u>.

The jury answered questions on the special verdict form as follows:

1.  Did the plaintiff, Heidi Click, have injuries, damages or losses? (Yes or No)
ANSWER: Yes.
2.  Was the defendant, John Paul Lupori, M.D., D.D.S., negligent? (Yes or No)
ANSWER: Yes
3.  Was the negligence, if any, of the defendant, John Paul Lupori, M.D., D.D.S., a cause of any of the injuries, damages or losses claimed by the plaintiff? (Yes or No)

ANSWER: No

[ECF No. 37-2 at 1].

Accordingly, judgment was entered in favor of the defendant and against the plaintiff.

### F.  <u>The Pending Motion</u>.

Plaintiff's motion for a new trial argues that the jury rendered an inconsistent verdict.

Plaintiff points to testimony by Dr. Lupori where he admitted that his actions damaged Ms.

Click's right lingual nerve and lingual plate.  [ECF No. 42 at 2] (citing Transcript, ECF No. 40,

at 3).  Dr. Lupori also admitted that no one else touched Ms. Click's third molars but him, and

that he is not critical of the examination and treatment provided by the two oral surgeons who saw Ms. Click following the surgery.  *Id.*  Plaintiff argues that because the jury found that Dr. Lupori was negligent and because he admitted that his actions during the surgery caused damage to the right lingual nerve and lingual plate, it follows that the verdict was inconsistent.  [ECF No. 42 at 4].

In response Defendant points to the testimony of Dr. Heather Maddox (Ms. Click's present family doctor in Montana where she now lives) and Dr. Flynn, both of whom testified to the importance of a doctor's keeping accurate medical records.  [ECF No. 52 at 2–3].  One of Dr. Flynn's negligence opinions was that Dr. Lupori did not keep adequate medical records.  The defendant's expert, Dr. Hunter, testified that it was a deviation from the standard of care not to document the call to Dr. Lupori from Dr. Hornung and not to document the depth of Ms. Click's periodontal pockets.  However, on re-direct examination, Dr. Hunter testified that not documenting the Hornung call or the depth of the periodontal pockets did not cause any injuries to Ms. Click.  Dr. Hunter also testified that the manner in which Dr. Lupori performed the procedure was not negligent, notwithstanding that Ms. Click was injured.  Therefore, because the jury could have found that Dr. Lupori was negligent in his recordkeeping but not in the surgery, and that his negligent recordkeeping was not a cause of any injuries to her, the verdict is not necessarily inconsistent.  *Id.* at 3–4.

Plaintiff replies that counsel called attention to Dr. Lupori's recordkeeping problems as an issue of credibility, not negligence.  Plaintiff argues that the Court "need not engage in unreasonable or implausible mental gymnastics" in an attempt to reconcile the verdict.  [ECF No. 53 at 2].

# ANALYSIS

### A.      The Applicable Law.

A motion for a new trial is governed by Rule 59 of the Federal Rules of Civil Procedure. A court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). "A district court has broad discretion in deciding whether to grant a motion for a new trial." *Harvey By & Through Harvey v. Gen. Motors Corp.*, 873 F.2d 1343, 1346 (10th Cir. 1989). A federal court may set aside a jury verdict where the ends of justice require it, such as where the trial court believes that the jury's verdict is against the weight of the evidence. *Holmes v. Wack*, 464 F. 2d 86, 88–89 (10th Cir. 1972).

However, notwithstanding that broad discretion, "under the Seventh Amendment, the court may not substitute its judgment of the facts for that of the jury; it may only grant a new trial if it concludes that the jury's verdict was so against the weight of the evidence as to be unsupportable." *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1443 (10th Cir. 1988); *see also Bangert Bros. Const. Co. v. Kiewit W. Co.*, 310 F.3d 1278, 1299 (10th Cir. 2002). "Where a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999) (internal quotation marks and citations omitted). The burden of proof is on the moving party, *see Domann v. Vigil*, 261 F.3d 980, 983 (10th Cir. 2001), and the Court considers the record evidence in the light most favorable to the nonmoving party, *see Anaeme*, 164 F.3d at 1284.

When a special verdict form is used, "the trial court has a duty to try to reconcile the answers to the case to avoid retrial." *Harvey*, 873 F.2d at 1347. In determining whether any

inconsistency exists, the Court "must accept any reasonable explanation that reconciles the jury's verdict." *Domann*, 261 F.3d at 983; *see also Johnson v. Ablt Trucking Co.*, 412 F.3d 1138, 1144 (10th Cir. 2005) ("If there is any plausible theory that supports the verdict, the reviewing court must affirm the judgment."). "To be irreconcilably inconsistent, the jury's answers must be 'logically incompatible, thereby indicating that the jury was confused or abused its power.'" *Johnson*, 412 F.3d at 1144 (quoting *Stone v. Chicago*, 738 F.2d 896, 899 (7th Cir. 1984)).  The jury's findings "are to be construed in the light of the surrounding circumstances and in connection with the pleadings, instructions, and issues submitted." *Harvey*, 873 F.2d at 1347 (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 2510 (1971)).

### B.   <u>Medical Records.</u>

Defendant reconciles the jury verdict solely on the basis that the jury could have found that Dr. Lupori was negligent in his recordkeeping but that the negligence did not cause an injury to Ms. Click.  Contrary to Plaintiff's response to the motion, the plaintiff did not limit her discussion of the defendant's recordkeeping to Dr. Lupori's credibility.  Plaintiff's expert Dr. Flynn included Dr. Lupori's recordkeeping, with particular reference to his failure to document the call from Dr. Hornung, on his list of Dr. Lupori's actions or inactions that were below the applicable standard of care.  Plaintiff's counsel elicited from Defendant's expert, Dr. Hunter, the opinion that Dr. Lupori's recordkeeping was below the standard of care.  There was no contention or evidence that Dr. Lupori's poor recordkeeping caused the nerve injuries Ms. Click sustained.  Thus, the defendant correctly points to a manner of reconciling the verdict that is consistent with the evidence.

The jury's hypothetical resolution of the issues in that manner arguably could be viewed as being contrary to the Court's instructions on the law.  The Court's summary of the plaintiff's

13

claims in Instruction No. 1 (consistent with the negligence claim pled in the Complaint) focused

on negligence in performing the extraction.  The specific instruction on negligence informed the

jury that "[a] physician who has or who holds himself out as having special skill and knowledge

*to perform a particular operation, treatment, or procedure* is negligent if that physician does an

act that reasonably careful physicians possessing such special skill and knowledge would not do,

or fails to do an act that reasonably careful physicians possessing such special skill and

knowledge would do."  Instruction No. 12 (emphasis added).  When during deliberations the jury

asked "What is the definition of negligence?" the Court referred the jurors back to Instruction

No. 12.

However, the jury was instructed in Instruction No. 12 to consider the defendant's

alleged negligence in the context of his "operation, treatment, or procedure."  Given plaintiff's

emphasis on negligent recordkeeping, it would be difficult to criticize the jury if they viewed Dr.

Lupori as negligent in that regard (as he plainly was), and that his recordkeeping was part of his

overall "treatment" of the patient.  This negligence did not cause Ms. Click's injuries.  Thus, I

am inclined to agree with the defendant that the verdict can be reconciled in that manner. [2]

Regardless, as discussed next, I conclude that the verdict can be reconciled without going

through those "mental gymnastics."

### C.   <u>Negligence in the Surgical Procedure.</u>

There is no question that the damage to Ms. Click's inferior alveolar nerves on both sides

and to her lingual nerve on the right side were very serious, permanent injuries.  She has suffered

---

[2] The same could be said of Dr. Flynn's opinion that Dr. Lupori was negligent in his follow-up care – not part of the procedure as such but arguably part of his overall "treatment" of the patient.  The lack of follow-up care did not cause the nerve injuries.  While it might have been a plausible theory that lack of follow-up resulted in a delay in Ms. Click's seeking and obtaining treatment from other oral surgeons (as Dr. Flynn surmised), there was no proof that other oral surgeons could or would have been able to repair or significantly minimize the nerve damage had Ms. Click seen them sooner than she did.

permanent impairment, disfigurement, and severe pain.  Her quality of life has been significantly

reduced.  It is also beyond question that the injuries to her nerves (and the lesser injuries that she

sustained) were caused by Dr. Lupori.  There is no other explanation, nor was one suggested,

even by Dr. Lupori.

However, neither of the plaintiff's expert witnesses pointed to any specific negligent act

that, in his opinion, caused the injuries to the nerves.  To be sure, Dr. Flynn testified to a number

of acts or omissions that he believes fell below the applicable standard of care.  His opinions did

not, however, link any of those particular failings to the injuries to the three nerves.  Put another

way, he did not state nor did he explain any specific theory of causation.  Rather, his ultimate

opinion was that permanent damage to three of the four nerves was so unheard of that it must

have been the product of negligence.  Dr. Peede similarly opined that while injuries to inferior

alveolar nerves and lingual nerves are a known complication of wisdom teeth extraction and can

happen without negligence, the combination of complications in this case was so unprecedented

in his experience as to suggest that negligence must have occurred.

A rational jury certainly could have found, based on this evidence, that Dr. Lupori was

negligent in performing the procedure, and that his negligence caused injuries and damages to

Ms. Click.  But a rational jury could also have found, for example, that Dr. Lupori's failure to

section the lower wisdom tooth on the left side was negligent, but that the negligence was not a

cause of Ms. Click's injuries.  Dr. Flynn, Dr. Peede, and even Dr. Hunter (at least in his

deposition) all testified that extraction of that tooth without sectioning was below the standard of

care.  That was the only specific part of the operation that Dr. Peede singled out as having been

negligently performed.  But the primary nerve damage did not happen on the left side.  Rather,

the most serious and permanent injuries were to the inferior alveolar and lingual nerves on the

right side, where Dr. Lupori did section the lower wisdom tooth before he removed it.  The jury could rationally have concluded that Dr. Lupori was negligent in failing to section on the left side, but that this negligence was not a cause of the nerve damage.

Other examples can also be envisioned.  A rational jury could have accepted Dr. Flynn's opinion that the standard of care required the performance of a coronectomy on the lower wisdom teeth (contrary to the opinion of others), but that this negligence did not cause the injuries.  The jury could have agreed with Dr. Flynn that Dr. Lupori negligently drilled through Ms. Lupori's jawbone on the left side, but that this was not a cause of her nerve damage (most of which was on the right side).  This is the problem of identifying a laundry list of allegedly negligent acts but not being able specifically to link them to the nerve damage that occurred.

Therefore, I have to conclude, after review of the entire trial record, that the jury's verdict was not necessarily inconsistent.  Even if this Court might have reached a different conclusion had this been a trial to the Court, that is not a sufficient basis to set aside the jury's verdict.  In my judgment a rational jury could have found Dr. Lupori to have been negligent in some aspects of the surgery, and/or in his recordkeeping, and/or in his follow-up care, but that his negligence did not cause the nerve damage that Ms. Click suffered.  Thus, I am unable to find that the verdict was so against the weight of the evidence as to be unsupportable.

## ORDER

For the foregoing reasons, the plaintiffs' Motion for New Trial [ECF No. 42] is DENIED.  Although it will be of no consolation to Ms. Click, whom I very much admire based on my observations during the trial, nor to her able attorneys who put their heart and soul into this case, I do hope that Ms. Click will find ways in the future to cope with the bad hand that she was dealt.

DATED this 16th day of December, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge